**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TIMELINES, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.:_____ |
| | ) | |
| FACEBOOK, INC. | ) | Jury Trial Demanded |
| | ) | |
| Defendant. | ) | |

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

Timelines, Inc. ("Timelines") complains against Facebook, Inc. ("Facebook") as follows:

**Nature of the Action**

1. This matter seeks to protect Timelines, a small company headquartered in Chicago, that has been in business for almost five years, from being rolled over and quite possibly eliminated by the unlawful action by the world's largest and most powerful social media company, Facebook. Facebook has announced its intention to use and, indeed has already begun to re-direct Internet traffic, using Timelines' federally registered "TIMELINES" trademark as the centerpiece of Facebook's new product offering going forward, a move that, given the size and reach of Facebook, will essentially eliminate Timelines and leave the public with the confusing impression that plaintiff Timelines is somehow affiliated with Facebook. In the event that Facebook is permitted to move forward with release of its "Timeline" product offering, consumer confusion with Timelines' existing "Timelines" website will invariably result.

**Background Allegations**

2. Timelines owns and operates, among other things, Timelines.com. This website allows users to record and share events, and contribute descriptions, photos, videos, geographic

locations and links (collectively for ease of reference "Content") related to events. Anyone can gain access and be able to post Content to Timelines.com simply by creating an account.

    3.    Thus, by way of illustration, on Timelines.com, a user can record a personal or historic event that he or she wants to share with the world, ranging from a daughter's one year birthday party or a family wedding to an obscure basketball game or a much more public event like the Inauguration of President Obama. In connection with any such posted event, any user who accesses the website can add additional or new Content for that event. For example, USER A, a student, accesses Timelines.com and posts information about the American Civil War. USER B, a professor with no relation to USER A, may access the website and post additional Content about one or more of the Battles of the Civil War. USER B may also post additional information about the Civil War, perhaps about the existing technology of the day. The information will presented on the Timelines website in chronological order and will also appear whenever anyone accesses the site and searches for information about the Civil War. This same process could be used by family members chronicling happenings surrounding a family event.

    4.    Timelines is also an application service provider (ASP) for several large publishers including, The Boston Globe, The St. Louis Post-Dispatch and The Milwaukee Journal Sentinel. *See* http://timelines.boston.com/redsox. In connection with these offerings, users of those publishers' websites can review content organized by event similar to the way content is organized on Timelines.com. The content for these publishers is all created by the particular publisher and does not contain user Content. For example, at [http://timelines.boston.com/redsox](http://timelines.boston.com/redsox), a visitor to the website can access timeline information about, among other things, a particular Red Sox game, about the entire season, or about historical match-ups against particular opponents.

5. Timelines is the owner of, among others, the registered trademarks "Timelines" (U.S. Reg. No. 3,684,074), "Timelines.com" (U.S. Reg. No. 3,764,134), and "Timelines *& design*" (U.S. Reg. No. 3,784,720) (collectively "the Timelines Marks").

6. As the world's largest social media site, Facebook allows individuals and entities to maintain "Facebook pages." Interested Internet users can access those "Facebook pages" to obtain information posted on those pages either by visiting those web pages or by registering to be notified when Content is posted to those pages.

7. Like thousands of other businesses, plaintiff Timelines maintains a Facebook page, www.facebook.com/timelines. In the past, when an Internet user visited Facebook and searched for Timelines, the search results returned Timelines' Facebook page and a partial logo that the user could click on and be linked to Timelines' Facebook page.

8. On or about September 23, 2011, Timelines learned that Facebook is planning to launch (and recently has learned that the launch may occur as early as Saturday October 1, 2011), a service available to Facebook users called "Timeline." *See* www.facebook.com/about/timeline. This service is identical or nearly identical to what Timelines offers. *See* www.timelines.com.

9. Facebook understands that this has created confusion, because Timelines recently learned that Facebook is re-directing Internet users attempting to access Timelines' Facebook page to Facebook's new product offering which Facebook has confusingly named "Timeline." Put another way, a user who tries to access Timelines' Facebook page is, instead, redirected to Facebook's "Timeline" offering. *See* www.facebook.com/timelines.

10. Timelines and its users can no longer access its Timelines' Facebook page.

11. Facebook's use of the term "Timeline," and its redirection of Internet traffic from Timelines' Facebook page to Facebook's new "Timeline" offering, infringes on Timelines' federally registered trademarks in that it causes confusion as to the source of the services offered to users of the Internet. Indeed, Facebook's "Timeline" offering and its misdirection of users attempting to access Timelines' offering is intended to prevent Internet users from accessing information about Timelines.com and to allow users to instead use Facebook's "Timeline" offering.

12. Timelines seeks temporary, preliminary and permanent injunctive relief enjoining Facebook from using "Timeline," "Timelines," or any confusingly similar derivation thereof, and for monetary relief and any other relief the Court deems just.

### The Parties

13. Timelines is a Delaware corporation with its principal place of business in Chicago, Illinois and does business in Illinois under the name Timelines of Illinois, Inc.

14. Facebook is a Delaware corporation with its principal place of business in Palo Alto, California.

### Jurisdiction and Venue

15. Facebook has engaged in the transaction of business and committed the acts complained of herein in interstate commerce and within Illinois (and the Northern District of Illinois). Federal question jurisdiction is based upon 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(b). Venue is proper in this district under 28 U.S.C. § 1391(b) as the case in controversy arose in this judicial district. Venue is also proper in this district because Facebook is deemed to reside in Illinois pursuant to 28 U.S.C. § 1391(c).

16. This Court has jurisdiction over this action pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338, and supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367(a). The activities of Facebook as described herein are sufficient to subject them to the personal jurisdiction of this Court.

### Timelines' Ownership of the Marks

17. Timelines is the owner of Federal Trademark Registration Nos. 3,684,074 for "Timelines," 3,764,134 for "Timelines.com," and 3,784,720 for its "Timelines *& design*" logo.

18. Timelines uses the Timelines Marks in connection with "[p]roviding a web site that gives users the ability to create customized web pages featuring user-defined information about historical, current and upcoming events" and "managing web sites of others in the fields of historical, current and upcoming events."

19. Timelines filed its first application for the Timelines Mark on May 23, 2008, its first use was September 15, 2008, its first use in commerce was April 20, 2009, and its subsequent registration for "TIMELINES" issued on September 15, 2009.

20. Timelines filed for the Timelines.com mark on May 23, 2008, its first use was September 15, 2008, its first use in commerce was April 20, 2009 and the registration date was March 23, 2010.

21. Timelines filed for the "Timelines *& design*" mark on October 5, 2009, its first use was April 20, 2009, its first use in commerce was April 20, 2009 and the registration date was May 4, 2010.

22. Pursuant to 15 U.S.C. § 1057(b), these federal registrations are "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the mark."

23. Timelines has continuously and consistently used the Timelines Marks on the services enumerated in the foregoing registrations since on or about September 15, 2008 to promote and endorse its business.

24. In 2011, the Timelines.com website has averaged approximately 97,000 visitors per month.

25. Timelines has actively promoted Timelines.com on Twitter and Facebook through posting events of the day, and reaching out to bloggers and educators. Timelines also launched an iPhone application called "Disaster of the Day," which includes Content from Timelines.com. "Disaster of the Day" is also a federally registered trademark of Timelines.com.

26. Timelines has been nominated or recognized for numerous awards and accomplishments, including by way of example, an Open Web Award nomination, a Mashable.com recommendation for web-savvy families, recognition on Television Channel G4's "Attack of the Show" program, a named finalist for the Illinois Technology Association's CityLights Award in the Newcomer category, and as a finalist for the 2010 Chicago Innovation Awards.

27. Timelines has invested several million dollars into its business, and has taken swift action to protect its Marks.

### Facebook's Infringement of the Timelines Marks

28. As set forth above, on September 22, 2011, Timelines learned that Facebook was promoting Facebook "Timeline" and on September 26, 2011, Timelines learned that Facebook is imminently planning to make that offering available to its more than 750 million users.

29. Facebook "Timeline" would be made available to the entire world.

**A Likelihood of Confusion Exists**

30. Facebook's new website featuring the mark "TIMELINE" will provide a web site that gives users the ability to create customized web pages featuring user-defined information about historical, current and upcoming events.

31. Facebook's new website featuring the mark "TIMELINE" will manage web sites created by others which display historical, current and upcoming events.

32. Given the similarities between the services offered by Facebook and Timelines, the customers targeted by Facebook and Timelines, and the channels of trade of Facebook and Timelines, Facebook's use of the Timelines Marks will result in confusion as to the source, sponsorship, and/or affiliation of the Facebook website.

**COUNT I**

**LANHAM ACT – Federal Trademark Infringement (15 U.S.C. § 1114)**

33. Timelines repeats and realleges the allegations set forth in paragraphs 1 through 32.

34. Facebook's aforementioned acts constitute federal trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

35. Timelines possesses the sole and exclusive right to use the "TIMELINES" trademark in connection with the provision and management of customized web pages by virtue of Timelines' United States Trademark Registrations for the marks TIMELINES and TIMELINES *& design*.

36. Facebook's wrongful use of the federally registered TIMELINES trademark is likely to cause confusion, mistake, and/or deception as to Timelines' sponsorship and/or

authorization of Facebook's new "Timeline" product offering – where no such affiliation exists – and thereby violates section 32(a) of the Lanham Act, 15 U.S.C. § 1114.

37. Facebook's aforementioned acts have been conducted willfully and intentionally, with deceptive intent, thereby making this an exceptional case under 15 U.S.C. § 1117.

38. Facebook's unlawful conduct has caused, and will continue to cause, great, immediate, and irreparable harm to Timelines' business reputation, injury to its goodwill, and pecuniary damages.

39. Timelines has no adequate remedy at law.

## COUNT II

### LANHAM ACT – False Designation of Origin (15 U.S.C. § 1125(a))

40. Timelines repeats and realleges the allegations set forth in paragraphs 1 through 39.

41. Timelines possesses the sole and exclusive right to use the "TIMELINES" trademark by virtue of its original and ongoing use of the TIMELINES marks in connection with the provision and management of customized web pages.

42. Facebook's wrongful use of the TIMELINES trademark is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Facebook with Timelines, or as to the origin, sponsorship, or approval of Facebook's "Timeline" services and commercial activities.

43. In addition to improperly suggesting a relationship between Timelines and Facebook – where no such affiliation exists – Facebooks's wrongful use of the TIMELINES trademark will destroy the source-identifying function and goodwill that Timelines has cultivated in its "TIMELINES" marks.

44. Facebook's actions violate section 43(a) of the Lanham Act, 15 U.S.C. § 1125.

45. Facebook's aforementioned acts have been conducted willfully and intentionally, with deceptive intent, thereby making this an exceptional case under 15 U.S.C. § 1117.

46. Facebook's unlawful conduct has caused, and will continue to cause, great, immediate, and irreparable harm to Timelines' business reputation, injury to its goodwill, and pecuniary damages.

47. Timelines has no adequate remedy at law.

## COUNT III

### ILLINOIS CONSUMER FRAUD AND DECEPTIVE PRACTICES ACT

48. Timelines repeats and realleges the allegations set forth in paragraphs 1 through 47.

49. Facebook's unlawful conduct as described above constitutes unfair and deceptive acts and practices, including, but not limited to the use and employment of deception, fraud, false pretense, false promise, misrepresentation, and the concealment, suppression and omission of material facts, with intent that others rely upon the concealment, suppression and omission of such material facts in violation of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2.

50. Facebook's unlawful conduct as described above is willful and intentional, with deceptive intent, making this an exceptional case.

51. Facebook's unlawful use of the Timelines Marks is likely to deceive consumers to whom Facebook's promotional materials are directed.

52. Facebook's unlawful conduct has caused, and will continue to cause, great, immediate, and irreparable harm to Timelines' business reputation, injury to its goodwill, and pecuniary damages.

53. Timelines has no adequate remedy at law.

## COUNT IV

### ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT

54. Timelines repeats and realleges the allegations set forth in paragraphs 1 through 53.

55. Facebook's unlawful conduct as described above represents deceptive trade practices in that Facebook is engaging in conduct which creates a likelihood of confusion or misunderstanding in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2.

56. Facebook's unlawful conduct as described above is willful and intentional, with deceptive intent, making this an exceptional case.

57. Facebook's unlawful use of the Timelines Marks is likely to deceive consumers to whom Facebook's promotional materials are directed.

58. Facebook's unlawful conduct has caused, and will continue to cause, great, immediate, and irreparable harm to Timelines' business reputation, injury to its goodwill, and pecuniary damages.

59. Timelines has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff Timelines prays for the entry of judgment as follows:

A. That the Court grant it temporary, preliminary and permanent injunctive relief as governed by principles of equity;

B. That Facebook, in accordance with 15 U.S.C. § 1116(a), be directed to file with this court and serve upon Timelines within thirty (30) days after service of the permanent injunction a report in writing under oath, setting forth in detail the manner and form in which Facebook has complied with the permanent injunction;

C. Declaring that Facebook violated Sections 32(a) and 43(a) of the Lanham Act, the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2, and the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2;

D. That this case be deemed an exceptional case under 15 U.S.C. §§ 1117(a) and (b) and that Facebook be deemed liable for and ordered to reimburse Timelines for its reasonable attorneys' fees;

E. That Timelines be awarded exemplary damages for Facebook's willful and intentional acts;

F. That Facebook recover its costs of court;

G. Enjoining Facebook from using any version or confusingly similar derivation of the Timelines Marks;

H. Ordering Facebook to publish corrective advertising to dispel the false and misleading impressions created by its promotional materials;

I. Ordering Facebook to pay Timelines damages in an amount adequate to compensate it for Facebook's unlawful conduct;

J. Awarding Timelines monetary relief including Facebook's profits for its unlawful conduct;

K. Trebling all damages awarded to Timelines by reason of Facebook's unlawful conduct;

L. Awarding punitive damages pursuant to 815 ILCS 505/10a;

M. Granting Timelines such other relief as this Court deems just.

## JURY DEMAND

Timelines demands a trial by jury of all issues properly so triable.

Dated: September 29, 2011                           TIMELINES, INC.


By:   /s/ James T. Hultquist
         One of its Attorneys

James T. Hultquist (#6204320)
Douglas Alan Albritton (#6228734)
REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, Illinois 60606-7507
(312) 207-1000
(312) 207-6400 (facsimile)
jhultquist@reedsmith.com
dalbritton@reedsmith.com