UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TIMELINES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 11 C 06867 |
| | ) | |
| v. | ) | Honorable Edmond E. Chang |
| | ) | (sitting as emergency judge) |
| FACEBOOK, INC., | ) | |
| | ) | Honorable John W. Darrah |
| Defendant. | ) | (assigned judge) |

**ORDER**

Today, Plaintiff Timelines, Inc. filed a complaint against Defendant Facebook, Inc., alleging violations of the federal trademark laws, 15 U.S.C. §§ 1114, 1125, as well as Illinois state law deceptive-practices laws. R. 1.[1] (This Court is serving as the emergency judge in lieu of the judge assigned to this case.) Timelines moved for a temporary restraining order, asking for an order barring Facebook from offering a service Facebook has labeled, "Timeline." Although TRO hearings are typically *ex parte*, Facebook received notice of the motion (though not much notice, the memorandum in support of the motion was filed on the docket a little before Noon, and the Court convened an initial hearing at 1 p.m., and then reconvened at 4 p.m.) The facts below are drawn from an affidavit Timelines filed in support of the motion, exhibits attached to the parties' filings, and facts elicited at the hearing, including

---

[1]Subject matter jurisdiction over the federal law claims is secure under federal-question jurisdiction, 28 U.S.C. § 1331, and supplemental jurisdiction applies to the state law claims, 28 U.S.C. § 1367.

representations by in-house counsel from Facebook and under-oath testimony from a Facebook product manager.

Timelines operates Timelines.com, which is a website that allows users to record and share events, and allows other users to add descriptions, photos, videos, and links related to events. R. 8, Brian Hand Aff. ¶ 5. For example, a user can post content about a family event, such as a birthday party, and then other users can add more content to that event. *Id.* ¶ 6. Or a user can post content about a historical event, such as the Civil War, and other users could add content to that event. *Id.* Timelines registered three service marks: "Timelines," "Timelines.com," and "Timelines" plus its design logo. *Id.* ¶ 3.

Facebook is a social media website with over 750 million users. *Id.* ¶¶ 8, 22. Facebook allows both individuals and entities to create and maintain Facebook pages. *Id.* ¶ 8. Among other features, Facebook users can post content to their pages, and users can also post content to other users' pages.

On September 22, 2011, Timelines learned that Facebook was planning to launch a service named "Timeline." *Id.* ¶ 8. The Timeline service will be a new user interface incorporated into Facebook (in other words, not as a separate service on a site independent of Facebook.com). Users will be able to post and display content in a time-based fashion, including posting to earlier points in time. Timelines believed that Facebook was planning to "launch" its Timeline service as soon as tomorrow, October 1. *Id.* ¶ 8. In its TRO filing, Timelines argued two prominent concerns. First,

Timelines's own Facebook page had essentially disappeared. Users who searched on Facebook for "Timelines" no longer saw Timelines's own Facebook page in the search results, but rather were re-directed to Facebook's Timeline page. R. 8 at 3-4; Hand Aff. ¶ 12. And those visitors to Timelines's website who clicked on the "find us on Facebook" link were directed to Facebook's Timeline page, rather that Timelines's own Facebook page. Hand Aff. ¶ 12. The second prominent concern argued by Timelines was the prospect of 750 million users associating "Timeline" with Facebook's service, rather than with Timelines's service, due to what was thought to be an imminent "launch" of the Facebook service. R. 8 at 4.

In order to obtain a temporary restraining order, Timelines must show that it will suffer irreparable harm, has no adequate remedy at law, and its claims have a likelihood of success. *Girl Scouts of Manitou Council v. Girl Scouts of USA*, 549 F.3d 1079, 1086-87 (7th Cir. 2008) (preliminary injunction factors). If Timelines can meet those requirements, then before issuing a TRO, the Court would still have to balance, on a sliding scale, the nature and degree of Timelines's injury, the likelihood of prevailing, the possible injury to Facebook if the TRO is granted, and finally the public interest. *Id.*

With regard to irreparable harm, the concern over the virtual disappearance of Timelines's website has been alleviated. At the reconvened hearing, Facebook represented, and Timelines confirmed, that Facebook had fixed the redirection problems. Timelines's Facebook page is now accessible, and the "find us on Facebook" link on Timelines's own website correctly brings the user to the Timelines Facebook

page. There is no reason to believe that the problem will arise again, and thus no basis to issue an order compelling Facebook to fix what it already has fixed. If the problem does, for any reason, occur again, Timelines is free to re-file the motion.

With regard to what was thought to be an imminent "launch" of Facebook's Timeline feature to its 750 million users, again that concern has been substantially – although not entirely – alleviated. The Court took the under-oath testimony of Samuel Lessin, Facebook's product manager for the Timeline feature. Lessin testified that access to Timeline is currently limited (as it has been since September 22) as follows: an individual who wants access must apply on Facebook to be a "developer," which includes representing that the user wishes to become an "open graph" developer, a special type of developer whom Facebook wishes to have early access to a feature (like Timeline) for product development purposes. Between now and Tuesday (when the assigned judge returns), Lessin testified, Facebook does not plan on opening access any broader than the current access and does not plan on any media events to promote Timeline.

So Timelines has not proven that a global launch is imminent. Still, Facebook estimates that already around 1.1 million users have enrolled as developers, and that every day some 100,000 to 200,000 additional users will enroll and gain access to Timeline. In light of that ongoing enrollment, Timeline asks this Court to order Facebook to stop enrolling new users, or at least to impose a cap on the number of new users.

4

It is true that trademark infringement and dilution generally are presumed to cause irreparable harm and not susceptible to a damages remedy at law. *AM General Corp. v. DamilerChrysler Corp.*, 311 F.3d 796, 832 (7th Cir. 2002). But that does not necessarily mean that a TRO or injunction is warranted – the balance of the factors still may dictate denying relief. *Id.* at 835 (denying injunction even assuming that trademark holder had some likelihood of success).

That is the case here. Even assuming that Timelines has some likelihood of success, based on the present state of the record (much can change at a preliminary injunction hearing or trial with a greater opportunity for a fuller record), that likelihood is modest, and the other factors warrant denying the motion. One question on the likelihood of success is the strength of the Timelines mark. "Marks are either fanciful, arbitrary, suggestive, descriptive, or generic." *H-D Michigan, Inc. v. Top Quality Service, Inc.*, 496 F.3d 755, 759 (7th Cir. 2007). On one end of that continuum, fanciful marks deserve the strongest protection because they are distinctive (and thus another source's use of the mark is likely to generate confusion); on the other end, generic and descriptive marks ordinarily cannot serve as trademarks at all. But if a descriptive mark acquires secondary meaning, that is, it is "uniquely associated with the original seller," then the mark may warrant protection. *H-D Michigan*, 496 F.3d at 759-60.

It is true that the registration of a trademark is "prima facie evidence," in the words of § 1115(a), of validity, but the presumption of validity can be overcome. "A

generic term is one that is commonly used as the name of a kind of goods." *H-D Michigan*, 496 F.3d at 759-60 (quotation omitted); *Custom Vehicles, Inc. v. Forest River, Inc.*, 476 F.3d 481, 483 (7th Cir. 2007). "For example, if an apple-seller names its company 'APPLE,' its name is generic." *H-D Michigan*, 496 F.3d at 760 n.2. As the "apple" example demonstrates, however, the analysis of a mark is product-sensitive. *Bliss Salon Day Spa v. Bliss World LLC*, 268 F.3d 494, 497 (7th Cir. 2001). A descriptive term "names a characteristic of a particular product or service." *H-D Michigan*, 496 F.3d at 759.

"Timelines" – when applied to a service such as the service provided by Timelines's website – does not seem to fall squarely within the generic category. Unlike a term such as "Car Wash," which would be the common name for the service of car washing, it is not at all clear what "Timelines" refers to when applied to a service. But there are reasonable arguments that "Timelines" is a descriptive term. The term describes the service provided by Timelines's website, that is, the creation on a website of a timelime for an event. Timelines would have to show that the term "Timelines" has acquired a secondary meaning to customers such that they uniquely associate the term with the Plaintiff. On the current record, it is not at all clear that Timelines can make that showing. The term was first used in commerce relatively recently by Timelines in April 2009. To be sure, Timelines avers that it has 97,000 visitors per month, but it is not clear whether those are unique visitors. Timelines states that it is the application service provider to large publishers, such as The Boston Globe, but even the website

to which Timelines cites, Hand Aff. ¶ 7 (timelines.boston.com/redsox), does not actually reflect "Timelines" unique font/design trademark. The site only says "RED SOX TIMELINES," using the word "TIMELINES" with a registered trademark symbol and *not* in the unique font of Timelines's design trademark. Nor has Timelines offered any consumer surveys, which though not an iron-clad necessity to show confusion, is a routine piece of evidence in trademark infringement cases not offered here.

In addition to the relative modesty of Timelines's likelihood of success, the other factors weigh against issuing a TRO. The global launch is not imminent. The addition of hundreds of thousands of users is a legitimate concern, but stopping or capping the enrollment will cause harm to Facebook's own good-will with its users who apply for access, expect to obtain it, but are denied. Those users who are denied access also weigh into the public interest factor; to be sure, avoiding consumer confusion is a public interest as well, but as discussed above, the likelihood of that confusion is not something that Timelines has sufficiently proven on the current record. It is also worth noting, when considering how much harm the parties respectively will suffer, that Timelines learned of the Facebook Timeline feature on September 22, and yet did not file for the TRO until 8 days later. On balance, Timelines has not shown that a TRO is warranted. It might very well be that a fuller record, built for a preliminary injunction hearing, could show that preliminary injunctive relief is warranted – but a TRO is not.

For the reasons stated above, the Court denies Plaintiff's motion for a temporary restraining order [7]. In light of one of the premises of the order – that enrollment will

grow at between 100,000 to 200,000 developers per day – the Court does order, as early discovery, Facebook to disclose periodically to Timelines the approximate number of total developers who have access to the Facebook Timeline feature. Facebook shall make the first disclosure as of 5 p.m. Central Time on October 1, 2011, and thereafter on a daily basis (including weekend days) at the same time. Timelines may renew its TRO motion if the actual enrollment is much greater than estimated (and may make the motion on an emergency basis this weekend if necessary). When the assigned judge is available to hear matters on Tuesday, October 4, 2011, the parties are of course free to address whether the disclosure requirement is still necessary.

                              ENTERED:

                              *Edmond E. Chang*

                              Honorable Edmond E. Chang
                              United States District Judge

DATE: September 30, 2011