**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TIMELINES, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 11 CV 6867 |
| | ) | The Hon. Judge Darrah |
| | ) | |
| FACEBOOK, INC. | ) | Jury Trial Demanded |
| | ) | |
| Defendant. | ) | |

**FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

Timelines, Inc. ("Timelines") complains against Facebook, Inc. ("Facebook") as follows:

**Nature of the Action**

1. This matter seeks to protect Timelines, a small company headquartered in Chicago that has been in business for approximately five years, from being rolled over and quite possibly eliminated by the unlawful action of the world's largest and most powerful social media company, Facebook. Facebook has announced its intention to use an exact or almost exact replica of Timelines' federally registered "TIMELINES" trademarks as the centerpiece of Facebook's new product offering going forward. Given the size and reach of Facebook, its use of Timelines' registered trademarks on goods and services confusingly similar to those offered by Timelines will essentially eliminate Timelines and leave the public with the confusing impression that Facebook is actually the owner of the TIMELINES Marks, that Timelines and Facebook are somehow affiliated, or that Timelines' use of the TIMELINES Marks actually infringes upon Facebook's rights. In the event that Facebook moves forward with release of its "Timeline" product offering calling it "Timeline," consumer confusion, including reverse trademark confusion, between Facebook and Timelines will invariably result. Indeed, numerous

individuals already have reached out to Timelines to ask it if Facebook's Timeline is affiliated with Timelines or vice versa. Facebook knew, or should have known, of Timelines' federally registered trademarks months, if not years, before it decided to pursue its Facebook Timeline offering. Yet, Facebook never reached out to Timelines and has now cynically claimed in this litigation that it is Timelines that waited too long when it took mere days to commence litigation once it learned for the first time of Facebook's Timeline. Any steps that Facebook took to name, and then roll out, its new offering "Timeline" were taken with actual or constructive knowledge of Timelines' federally registered trademarks, and Facebook is a company with the means and resources to have understood the risks that it was taking by taking steps inconsistent with Timelines' federally registered trademarks. Thus, there is no possible, legally recognized prejudice that Facebook can claim arising from this action.

## **Background Allegations**

2. Timelines owns and operates, among other things, Timelines.com. This website allows users to record and share events, and contribute descriptions, photos, videos, geographic locations and links (collectively for ease of reference "Content") related to events and people. Anyone can gain access and be able to post Content to Timelines.com simply by creating an account.

3. Thus, by way of illustration, on Timelines.com, a user can record a personal or historic event that he or she wants to share with the world, ranging from a daughter's one year birthday party or a family wedding to an obscure basketball game or a much more public event, like the Inauguration of President Obama. In connection with any such posted event, any user who accesses the website can add additional or new Content for that event. For example, USER A, a student, accesses Timelines.com and posts information about the American Civil War.

USER B, a professor with no relation to USER A, may access the website and post additional Content about one or more of the Battles of the Civil War. USER B may also post additional information about the Civil War, perhaps about the existing technology of the day. The information will be presented on the Timelines website in chronological order and will also appear whenever anyone accesses the site and searches for information about the Civil War. This same process could be used by family members chronicling happenings surrounding a family event or the history of an individual within the family.

4. Timelines is also an application service provider (ASP) for several large publishers including The Boston Globe, The St. Louis Post-Dispatch, and The Milwaukee Journal Sentinel. *See* http://timelines.boston.com/redsox. In connection with these offerings, users of those publishers' websites can review content organized by event similar to the way content is organized on Timelines.com. The content for these publishers is all created by the particular publisher and does not contain user-Content. For example, at http://timelines.boston.com/redsox, a visitor to the website can access information about, among other things, a particular Red Sox game, about the entire season, or about historical match-ups against particular opponents.

5. Timelines is the owner of, among others, the federally registered trademarks "Timelines" (U.S. Reg. No. 3,684,074 and pending U.S. Application No. 85,432,026), "Timelines.com" (U.S. Reg. No. 3,764,134), and the "Timelines" design mark (U.S. Reg. No. 3,784,720) (collectively "the TIMELINES Marks").

6. As the world's largest social media site, Facebook allows individuals and entities to maintain "Facebook pages." Interested Internet users can access those "Facebook pages" to

obtain information posted on those pages either by visiting those web pages or by registering to be notified when content is posted to those pages.

7. Like thousands of other businesses, plaintiff Timelines maintains a Facebook page, www.facebook.com/timelines. In the past, when an Internet user visited Facebook and searched for Timelines, the search results returned Timelines' Facebook page and a partial logo that the user could click on and be linked to Timelines' Facebook page.

8. On or about September 22, 2011, Timelines learned that Facebook is planning to launch, in the very near future, a product/service available to Facebook users called "Timeline." *See* www.facebook.com/about/timeline. This product/service is identical or nearly identical to what Timelines offers. *See* www.timelines.com.

9. Facebook announced the launch of its Timeline product at its annual "Developer Conference" on September 22, 2011 ("F8 Conference"). The announcement of "Timeline" was the central component of Facebook CEO Mark Zuckerberg's address to the public. During that address, Mr. Zuckerberg consistently referred to Facebook's Timeline in a trademark way and as the identifier for a specific product or service. Additionally, the word Timeline was capitalized in all of the captioning to Mr. Zuckerberg's address as well as the slides and images he showed as part of his presentation.

10. Facebook has first-hand knowledge of the confusion that has already been created due to its proposed launch of its Timeline product. Among other reasons, starting soon after Facebook's announcement and then for days after (until Timelines appeared in court on its Motion for a Temporary Restraining Order), Facebook re-directed Internet users attempting to access *Timelines'* Facebook page (at www.facebook.com/timelines) to Facebook's own Timeline product offering. Put another way, a user who tried to access Timelines' Facebook page was,

instead, redirected to Facebook's "Timeline" offering. During the period where Facebook either intentionally or accidentally co-opted Timelines' Facebook page, Timelines and its users could not access Timelines' Facebook page.

11. Indeed, Facebook's misdirection of users attempting to access Timelines' offering by re-directing them to Facebook's own Timeline product was either (a) specifically intended to prevent Internet users from accessing information about Timelines.com and to persuade users to instead use Facebook's "Timeline" offering; or, (b) purely accidental in which case, if Facebook itself can be that confused regarding the two companies—due to Facebook's use of the TIMELINES Marks for almost identical services—one can imagine how confused a member of the general public will be.

12. Facebook's use of the term "Timeline," including its redirection of Internet traffic from Timelines' Facebook page to Facebook's new "Timeline" offering, infringes on Timelines' federally registered trademarks in that it causes confusion regarding the relationship or affiliation of Facebook and Timelines as well as confusion regarding the ownership of the TIMELINES Marks.

13. In addition to the various other claims made in this Complaint, Facebook's actions present a clear example of reverse trademark confusion: the senior user, Timelines, will be absolutely overwhelmed and swallowed up by the gigantic junior user, that is, Facebook. Among other things, the public has or will assume that Facebook's Timeline is really Timelines, and Timelines will lose the value of its TIMELINES Marks (including its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets). Timelines may come to be seen as the infringer, which will harm its reputation and good will.

14. Therefore, Timelines seeks injunctive relief enjoining Facebook from using "Timeline," "Timelines," or any confusingly similar derivation thereof, and for monetary relief and any other relief the Court deems just.

## The Parties

15. Timelines is a Delaware corporation with its principal place of business in Chicago, Illinois and does business in Illinois under the name Timelines of Illinois, Inc.

16. Facebook is a Delaware corporation with its principal place of business in Palo Alto, California.

## Jurisdiction and Venue

17. Facebook has engaged in the transaction of business and committed the acts complained of herein in interstate commerce and within Illinois (and the Northern District of Illinois). Federal question jurisdiction is based upon 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(b). Venue is proper in this district under 28 U.S.C. § 1391(b) as the case in controversy arose in this judicial district or a substantial portion of events giving rise to the claims in this case took place in this judicial district. Venue is also proper in this district because Facebook is deemed to reside in Illinois pursuant to 28 U.S.C. § 1391(c).

18. This Court has jurisdiction over this action pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338, and supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367(a). The activities of Facebook as described herein are sufficient to subject Facebook to the personal jurisdiction of this Court.

## Timelines' Ownership of the Marks

19. Timelines is the owner of Federal Trademark Registration Nos. 3,684,074 for "Timelines," 3,764,134 for "Timelines.com," and 3,784,720 for its "Timelines" design mark.

Timelines also has a pending application (No. 85,432,026) for "Timelines" for an additional class of services.

20. Timelines uses the TIMELINES Marks in connection with various goods and services, including without limitation "[p]roviding a web site that gives users the ability to create customized web pages featuring user-defined information about historical, current and upcoming events," "managing web sites of others in the fields of historical, current and upcoming events," and providing "computer services [for] . . . creating on-line virtual communities for registered users to organize groups and events, participate in discussions, and engage in social, business and community networking."

21. Timelines filed its first application for the mark "Timelines" on May 23, 2008, its first use was September 15, 2008, its first use in commerce was April 20, 2009, and its subsequent registration for "TIMELINES" issued on September 15, 2009. *See* Ex. A to this Amended Complaint.

22. Timelines filed for the Timelines.com mark on May 23, 2008, its first use was September 15, 2008, its first use in commerce was April 20, 2009, and the registration date was March 23, 2010. *See* Ex. B to this Amended Complaint.

23. Timelines filed for the "Timelines" design mark on October 5, 2009, its first use was April 20, 2009, its first use in commerce was April 20, 2009, and the registration date was May 4, 2010. *See* Ex. C to this Amended Complaint.

24. Timelines filed for an additional application for the mark "Timelines" on September 26, 2011 for additional services. The first use of the mark for those services was September 15, 2008, and its first use in commerce for those services was April 20, 2009. That application is currently pending. *See* Ex. D to this Amended Complaint.

25. Pursuant to 15 U.S.C. § 1057(b) and § 1115(a), these federal registrations are "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the mark."

26. Timelines has continuously and consistently used the TIMELINES Marks on the services enumerated in the foregoing registrations since on or about September 15, 2008 to promote and endorse its business.

27. In 2011, the Timelines.com website has averaged approximately 97,000 visitors per month.

28. Timelines has actively promoted Timelines.com and its goods and services using the TIMELINES Marks. Such promotion has included the use of social media, such as Twitter and Facebook, through posting events of the day, and Timelines frequently reaches out to bloggers and educators to promote its products. Timelines has also launched an iPhone application called "Disaster of the Day," which includes Content from Timelines.com. "Disaster of the Day" is also a federally registered trademark of Timelines, Inc.

29. Timelines has been nominated or recognized for numerous awards and accomplishments, including by way of example, an Open Web Award nomination, a Mashable.com recommendation for web-savvy families, recognition on Television Channel G4's "Attack of the Show" program, a named finalist for the Illinois Technology Association's CityLights Award in the Newcomer category, and as a finalist for the 2010 Chicago Innovation Awards.

30. Timelines has invested several million dollars into its business, and has taken swift action to protect its Marks when necessary. In addition to having a federal registration on the TIMELINES Marks and the strong nature of the TIMELINES Marks due to their suggestive

characteristics, the time and effort that Timelines has put into developing and marketing the TIMELINES Marks has made it so that the TIMELINES Marks have secondary meaning and the public associates the TIMELINES Marks as identifiers for Timelines' goods and services.

**Facebook's Infringement of the TIMELINES Marks**

31. As set forth above, on September 22, 2011, Timelines learned that Facebook was promoting its new service known as "Facebook's Timeline" and on September 26, 2011, Timelines learned that Facebook is imminently planning to make that offering available to its more than 750 million users.

32. Facebook has already opened up Facebook's Timeline for a test-run, by allowing over 1.3 million "developers" to access and use the Facebook Timeline service. These "developers" are users of Facebook who essentially signed up early to use Facebook's Timeline. Facebook continues to add tens of thousands of "developers" a day to the number of people using Facebook's Timeline even though Facebook has not actually rolled the product out to all of Facebook's users.

33. By information and belief, Facebook's plan is that Facebook's Timeline will be made available to the entire world.

34. Just by the sheer mammoth size of Facebook and its prevalence in people's lives, when Facebook makes an announcement that it is changing the entire Facebook user experience and replacing it with a product/service called "Timeline," that announcement gets picked up and, in fact, has been picked up, by major media outlets—in addition to Facebook's own marketing.

35. It is impossible for a small company, working to build its brand, to compete with the kind of marketing and advertising that Facebook has already put out and will continue to put out regarding Facebook's Timeline. It is further impossible for a small company working to

build its brand to compete with the kind of national attention that Facebook has and will continue to garner.

36. Facebook's use of Timeline as the name of its product/service will almost certainly overwhelm Timelines and cause confusion in the marketplace.

**A Likelihood of Confusion Exists**

37. Just like Timelines, Facebook is using the TIMELINES Marks to provide a web site that gives users the ability to create customized web pages featuring user-defined information about historical, current and upcoming events.

38. Just like Timelines, Facebook is using the TIMELINES Marks to provide a service for managing web sites created by others which display historical, current and upcoming events. Given the similarities between the services offered by Facebook and Timelines, the customers targeted by Facebook and Timelines, and the channels of trade of Facebook and Timelines, Facebook's use of the TIMELINES Marks will result in confusion as to the source, sponsorship, and/or affiliation of the Facebook website and Facebook's goods and services, the source, sponsorship, and/or affiliation of Timelines' website and Timelines' goods and services, and the sponsorship, affiliation, or endorsement as between the companies Timelines and Facebook and their respective products and services.

**COUNT I**

**LANHAM ACT – Federal Trademark Infringement (15 U.S.C. § 1114)—Reverse Trademark Infringement**

39. Timelines repeats and realleges the allegations set forth in paragraphs 1 through 38.

40. Facebook's aforementioned acts constitute federal trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114. Specifically, for purposes of this Count I, Facebook's acts constitute reverse trademark infringement.

41. Timelines possesses the sole and exclusive right to use the "TIMELINES" Marks in connection with the provision and management of customized web pages using user-defined information about people and events, as well as the management of such web pages by virtue of Timelines' United States Trademark Registrations for the TIMELINES word marks and design marks.

42. Facebook's wrongful use of the federally registered TIMELINES trademark is likely to cause confusion, mistake, and/or deception and, because of Facebook's ability to overwhelm Timelines in the marketplace, people are likely to believe that Facebook is the rightful owner of the TIMELINES Marks and that, among other results, either Timelines is infringing on Facebook's Marks or that Timelines is somehow affiliated with Facebook even though no such affiliation exists. This is a violation of section 32(a) of the Lanham Act, 15 U.S.C. § 1114.

43. Facebook's aforementioned acts have been conducted willfully and intentionally, with deceptive intent, thereby making this an exceptional case under 15 U.S.C. § 1117.

44. Facebook's unlawful conduct has caused, and will continue to cause, great, immediate, and irreparable harm to Timelines' business reputation, injury to its goodwill, and pecuniary damages.

45. Timelines has no adequate remedy at law.

## COUNT II

### LANHAM ACT – Federal Trademark Infringement (15 U.S.C. § 1114)—Direct Trademark Infringement

46. Timelines repeats and realleges the allegations set forth in paragraphs 1 through 45.

47. Facebook's aforementioned acts constitute federal trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

48. Timelines possesses the sole and exclusive right to use the "TIMELINES" Marks in connection with the provision and management of customized web pages using user-defined information about people and events, as well as the management of such web pages by virtue of Timelines' United States Trademark Registrations for the TIMELINES word marks and design marks.

49. In addition to overwhelming Timelines' TIMELINES Marks in the Marketplace, Facebook's wrongful use of the federally registered TIMELINES Marks is likely to cause confusion, mistake, and/or deception as to Timelines' sponsorship and/or authorization of Facebook's new "Timeline" product offering – where no such affiliation exists – and it thereby violates section 32(a) of the Lanham Act, 15 U.S.C. § 1114.

50. Facebook's aforementioned acts have been conducted willfully and intentionally, with deceptive intent, thereby making this an exceptional case under 15 U.S.C. § 1117.

51. Facebook's unlawful conduct has caused, and will continue to cause, great, immediate, and irreparable harm to Timelines' business reputation, injury to its goodwill, and pecuniary damages.

52. Timelines has no adequate remedy at law.

**COUNT III**

**LANHAM ACT – False Designation of Origin (15 U.S.C. § 1125(a))**

53. Timelines repeats and realleges the allegations set forth in paragraphs 1 through 52.

54. In addition to its ownership of federal trademark registrations, Timelines possesses the sole and exclusive right to use the "TIMELINES" Marks by virtue of its original and ongoing use of the TIMELINES Marks in connection with the provision and management of customized web pages.

55. Facebook's wrongful use of the TIMELINES Marks is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Facebook with Timelines, or as to the origin, sponsorship, or approval of both Facebook's "Timeline" services and commercial activities and Timelines' goods, services, and commercial activities.

56. In addition to improperly suggesting a relationship between Timelines and Facebook – where no such affiliation exists – Facebooks's wrongful use of the TIMELINES Marks will destroy the source-identifying function and goodwill that Timelines has cultivated in the "TIMELINES" Marks.

57. Facebook's actions violate section 43(a) of the Lanham Act, 15 U.S.C. § 1125.

58. Facebook's aforementioned acts have been conducted willfully and intentionally, with deceptive intent, thereby making this an exceptional case under 15 U.S.C. § 1117.

59. Facebook's unlawful conduct has caused, and will continue to cause, great, immediate, and irreparable harm to Timelines' business reputation, injury to its goodwill, and pecuniary damages.

60. Timelines has no adequate remedy at law.

**COUNT IV**

**Unfair Competition under the Lanham Act and Common Law**

61. Timelines repeats and realleges the allegations set forth in paragraphs 1 through 60.

62. In addition to its ownership of federal trademark registrations, Timelines possesses the sole and exclusive right to use the "TIMELINES" Marks by virtue of its original and ongoing use of the TIMELINES Marks in connection with the provision and management of customized web pages.

63. Facebook's wrongful use of the TIMELINES Marks for the same or extremely similar goods and services constitutes unfair competition under both federal law and common law.

64. Facebook's actions constituting unfair competition have been taken by Facebook with willful and deceptive intent, thereby making this an exceptional case.

65. Facebook's unlawful conduct has caused, and will continue to cause, great, immediate, and irreparable harm to Timelines' business reputation, injury to its goodwill, and pecuniary damages.

66. Timelines has no adequate remedy at law.

**COUNT V**

**ILLINOIS CONSUMER FRAUD AND DECEPTIVE PRACTICES ACT**

67. Timelines repeats and realleges the allegations set forth in paragraphs 1 through 66.

68. Facebook's unlawful conduct as described above constitutes unfair and deceptive acts and practices, including, but not limited to the use and employment of deception, fraud, false

pretense, false promise, misrepresentation, and the concealment, suppression and omission of material facts, with intent that others rely upon the concealment, suppression and omission of such material facts in violation of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2.

69. Facebook's unlawful conduct as described above is willful and intentional, with deceptive intent, making this an exceptional case.

70. Facebook's unlawful use of the TIMELINES Marks is likely to deceive consumers to whom Facebook's promotional materials are directed.

71. Facebook's unlawful conduct has caused, and will continue to cause, great, immediate, and irreparable harm to Timelines' business reputation, injury to its goodwill, and pecuniary damages.

72. Timelines has no adequate remedy at law.

## COUNT VI

## ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT

73. Timelines repeats and realleges the allegations set forth in paragraphs 1 through 72.

74. Facebook's unlawful conduct as described above represents deceptive trade practices in that Facebook is engaging in conduct which creates a likelihood of confusion or misunderstanding in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2.

75. Facebook's unlawful conduct as described above is willful and intentional, with deceptive intent, making this an exceptional case.

76. Facebook's unlawful use of the TIMELINES Marks is likely to deceive consumers to whom Facebook's promotional materials are directed.

77. Facebook's unlawful conduct has caused, and will continue to cause, great, immediate, and irreparable harm to Timelines' business reputation, injury to its goodwill, and pecuniary damages.

78. Timelines has no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Timelines prays for the entry of judgment as follows:

A. That the Court grant Timelines injunctive relief as governed by principles of equity;

B. That Facebook, in accordance with 15 U.S.C. § 1116(a), be directed to file with this court and serve upon Timelines within thirty (30) days after service of the permanent injunction a report in writing under oath, setting forth in detail the manner and form in which Facebook has complied with the permanent injunction;

C. That the Court declare that Facebook has violated Sections 32(a) and 43(a) of the Lanham Act, the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2, and the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2;

D. That this case be deemed an exceptional case under 15 U.S.C. §§ 1117(a) and (b) and that Facebook be deemed liable for and ordered to reimburse Timelines for its reasonable attorneys' fees and court costs (under any applicable law or rule);

E. That Timelines be awarded exemplary damages for Facebook's willful and intentional acts;

F. That Timelines recover its costs of court;

G. That the Court enjoin Facebook from using any version or confusingly similar derivation of the TIMELINES Marks;

H. That the Court Order Facebook to publish corrective advertising to dispel the false and misleading impressions created by its promotional materials, or grant an appropriate award to Timelines to reflect the cost of such corrective advertising that Timelines can use at its discretion, including to publish corrective advertising and dispel those impressions;

I. That the Court Order Facebook to pay Timelines damages in an amount adequate to compensate it for Facebook's unlawful conduct;

J. That the Court award Timelines monetary relief including Facebook's profits for its unlawful conduct;

K. That the Court award Timelines monetary relief including a reasonable royalty to Timelines for Facebook's wrongful use of the TIMELINES Marks;

L. That the Court treble all damages awarded to Timelines by reason of Facebook's unlawful conduct;

M. That the Court award Timelines punitive damages against Facebook pursuant to 815 ILCS 505/10a; and,

N. That the Court grant Timelines such other relief as this Court deems just.

**JURY DEMAND**

Timelines demands a trial by jury of all issues properly so triable.

Dated: October 8, 2011

TIMELINES, INC.

By: /s/ James T. Hultquist
One of its Attorneys

James T. Hultquist (#6204320)
Douglas Alan Albritton (#6228734)
REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, Illinois 60606-7507
(312) 207-1000
(312) 207-6400 (facsimile)
jhultquist@reedsmith.com
dalbritton@reedsmith.com

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that he served the foregoing Plaintiff's First Amended Complaint on the Defendant Facebook, Inc., by means of the Court's CM/ECF System, which causes a true and correct copy of the same to be served electronically on all CM/ECF registered counsel of record, on October 8, 2011.

/s/ Douglas A. Albritton
Douglas A. Albritton