**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TIMELINES, INC. | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | Civil Action No.: 11 CV 6867 |
| | ) | |
| v. | ) | HONORABLE JOHN W. DARRAH |
| | ) | |
| FACEBOOK, INC. | ) | Jury Trial Demanded |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |

**TIMELINES' RESPONSE BRIEF IN OPPOSITION TO FACEBOOK'S
MOTION *IN LIMINE* NO. 3: TO EXCLUDE EVIDENCE, ARGUMENT,
AND TESTIMONY REGARDING FACEBOOK'S UNRELATED
TRADEMARK PROSECTION AND ENFORCEMENT EFFORTS**

Plaintiff/Counter-Defendant Timelines, Inc. ("Timelines" or "Plaintiff") submits this response brief in opposition to Defendant/Counter-Plaintiff Facebook, Inc.'s ("Facebook") Motion *In Limine* No. 3: To Exclude Evidence, Argument, and Testimony regarding Facebook's Unrelated Trademark Prosecution and Enforcement Efforts ("Motion") and states as follows:

**INTRODUCTION**

In opposition to Facebook's motion for summary judgment, Timelines noted many of the seemingly generic "dictionary" terms that Facebook has trademarked, including "like," "poke" and "wall," to name just a few. The Court noted this argument, and Facebook's historical trademarks and trademark enforcement practices, in its opinion denying Facebook's motion for summary judgment. In just one example, the Court found that evidence of Facebook's trademark rights in the term WALL is relevant to Facebook's fair use defense and whether Facebook's use of Timeline was in good faith. (*See* S.J. Opn. at p. 22, Dkt. No. 116.) Facebook's other historical marks, and evidence of them, directly address Facebook's arguments that dictionaries,

searches run on Google (or other web browers), media-uses, and other "common" practices are evidence of whether a term is not entitled to trademark protection.

So, on the one hand, Facebook wants to argue that because "timeline" appears in a dictionary, it is not proper for trademark protection. On the other hand, Facebook wants to avoid evidence that its trademarks appear in dictionaries (and are used in the media, found by searches on Google, etc.). If Facebook's motion were granted, the jury would be left with the wrong impression, if Timelines argues, for example, that Facebook wants a different standard to apply to Timelines than Facebook believes should apply to itself for matters involving trademarks which appear in dictionaries. And, Facebook did not cite any cases for any general rule that evidence of other trademarks, and historical enforcement actions, generally is not relevant. There is no such law. In short, evidence of Facebook's other trademarks is relevant and properly admissible under a number of different theories:

First, given the sheer magnitude, frequency, and repetition of Facebook's trademark prosecution, this evidence qualifies as the "routine practice of an organization" and is therefore admissible under Fed. R. Evid. 406. And as evidence of routine practice, Facebook's trademark prosecution demonstrates that Facebook treated Timeline as a trademark because Facebook routinely and systematically trademarks terms that it uses in connection with its website services. This, of course, has a direct bearing on Facebook's fair use defense. Second, Facebook's own practices help Timeline rebut Facebook's arguments about why Timelines should not be entitled to protection. Third, Facebook's activities are admissible under the exceptions set forth in Rule 404(b). Under 404(b), Facebook's extensive trademark prosecution demonstrates that Facebook, as a savvy and experienced company with a significant trademark portfolio, has a sophisticated understanding of trademark law. From this, a jury could infer that Facebook had knowledge that

it was infringing Timelines' mark, thus bearing on the issue of whether Facebook willfully infringed Timelines' marks. And while Facebook has failed to demonstrate that it will suffer from unfair prejudice, any unfair prejudice can be mitigated by a limiting instruction, explaining that the evidence is admitted for the limited purpose of demonstrating intent, knowledge, and absence of mistake. For these reasons, which are explained more fully below, Facebook's Motion should be denied.

## ARGUMENT

**A.  This Court Determined that Facebook's Trademark Rights are Relevant to the Issues of Good Faith and Fair Use.**

This Court has already determined that Facebook's trademark prosecution of the term WALL is relevant to both the issues of good faith and fair use. In its Summary Judgment Opinion, the Court held that because Facebook "asserted it intended to replace its 'Wall,' one of Defendant's trademarks, with the 'Timeline,'" a jury could find that "Defendant's use of the term was not in good faith or a fair use of the term." (S.J. Opinion, p. 22.) There are several bases that support the Court's finding here. And these grounds apply equally to, and support the admissibility of, Facebook's other trademarks as well — not just WALL.

**B.  Facebook's Practices Are Direct Evidence That Timelines Should Be Permitted To Use To Rebut Facebook's Anticipated Trial Arguments.**

Facebook intends to argue at trial that matters such as dictionaries, web searches (e.g., on Google or Yahoo), third-party uses, media uses and a "survey" show that the "generic" term "Timelines" is not subject to trademark protection. Contextually, to understand these arguments, Timelines should be able to argue that these matters are not, for example, true with respect to terms that Facebook has trademarked such as "wall," "face," "poke," and like." If Facebook's arguments were true all of the time, then it would not have protectable marks in those terms.

Fully understanding these matters will help the jury evaluate Timelines' and Facebook's various arguments in the proper context.

## C.  Facebook's Trademark Prosecution is Relevant and Admissible under Rule 406 Because it is the Routine Practice of an Organization.

Facebook's trademark prosecution is so repetitious and systematic that it constitutes routine practice under Rule 406 and is admissible to negate Facebook's fair use defense.  Under Federal Rule of Evidence 406, "[e]vidence . . . of the routine practice of an organization . . . is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice." *Brennan v. Paul Revere Life Ins. Co.*, No. 00 C 0725, 2002 WL 1284385, at \*3 (N.D. Ill. June 10, 2002).  Pattern-of-conduct or habit evidence must be numerous enough to base an inference of systematic conduct and to establish one's regular response to a repeated specific situation.  *Simplex, Inc. v. Diversified Energy Sys., Inc.*, 847 F.2d 1290, 1293 (7th Cir. 1988) (citation omitted).  However, "Rule 406's foundational requirements for admissibility of evidence of 'routine practice' are appropriately less stringent than those demonstrating the "habit of a person*." Wetherill v. Univ. of Chicago*, 570 F. Supp. 1124, 1129 (N.D. Ill. 1983).

Facebook's trademark prosecution includes **106** different trademark applications.  On top of this, Facebook has filed 46 different actions to enforce its various trademarks.  (*See* Timelines' Statement of Additional Facts, ¶ 45, Dkt. No. 92.)  Its trademarks include LIKE, POKE, WALL, and FACE, to name a few. (S.J. Opn., p. 10, Dkt. No. 116.)  These terms all appear, did appear, or represent different functionality on the Facebook webpage.  In fact, WALL is—at least in part—the precursor to Facebook's Timeline product, which of course, is Facebook's most important brand. (*Id.* at 22, Dkt. No. 116.)  This evidence, that is, Facebook's trademark prosecution and enforcement efforts, demonstrates that Facebook does just pursue

trademark protection randomly or occasionally. Rather, Facebook has a policy and standard procedure—albeit an unwritten one — to "automatically" and habitually protect and lock down terminology that it uses on or in connection with its website. *See Brennan*, 2002 WL 1284385 *4 (allowing evidence under Rule 406 that "tends to show the existence of a regularly-followed policy or practice that is sufficiently routine and 'automatic.'").

Given the repetitious and systematic nature, not to mention the vast number, of Facebook's trademark applications and enforcement efforts, it is "routine practice" for Facebook to trademark terms that it uses in connection with its website and enforce its trademark rights against its competition. And so Facebook's trademark applications and enforcement efforts qualify as "routine practice" under Rule 406.

*U.S. v. Pitt-DesMoines, Inc.* is on point. 1997 WL 525372 (N.D. Ill. July 31, 1997). In *Pitt-DesMoines*, the court denied a defendant steel company's motion *in limine* that sought to exclude prior instances of the way defendant secured steel beams. *Id.* In finding that the evidence was admissible under Rule 406 as evidence of the "routine practice" of the defendant, the court emphasized the difference between "routine practices" evidence and "character evidence" or "other acts evidence," which the court explained, "is a generalized description of one's disposition." *Id.* Particularly important to the court was that the plaintiff did not introduce the evidence "to show generally that [defendant] is careless or irresponsible." *Id.* Instead, plaintiff introduced the evidence to demonstrate the manner in which defendant secured steel beams. *See id.*

Like the plaintiff in *Pitt-DesMoines*, Timelines does not offer evidence of Facebook's trademark prosecution to establish a general trait of Facebook. Instead, Facebook's trademark prosecution is a direct insight into the how Facebook systematically protects terms and

functionality on its website. And from this evidence, a jury could infer that Facebook treated Timeline as a trademark because "Timeline," like other terms that Facebook has consistently trademarked and defended, is the name of a product or function that Facebook offers on its website. Put differently, this evidence will help explain how and why Timeline is different from the 106 other trademarked terms that Facebook uses as part of its website services—including the letter "F."

Because Facebook repetitiously and systematically trademarks terms that it uses in connection with its website services, Facebook's trademark prosecution and enforcement efforts constitutes "routine practice" and meets the admissibility requirements under Rule 406. This evidence, therefore, is directly relevant to rebut Facebook's argument that it made fair use of the TIMELINES marks.

**D. Facebook's Trademark Prosecution is Relevant Under 404(b) For the Purpose of Proving Knowledge.**

Even if Facebook's trademark prosecution does not meet the admissibility requirements of Rule 406, it is still admissible under Rule 404(b) to show intent, knowledge, and absence of mistake. Facebook correctly states the general rule that, under Rule 404(b), evidence of prior acts is not admissible to "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." (Mtn. p. 4.); *see United States v. Perkins*, 548 F.3d 510, 513-14 (7th Cir. 2008). Rule 404(b), however, *does* allow evidence of prior acts for "other permissible, non-propensity purposes, 'such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake.'" *See id.* (citing Fed. R. Evid. 404(b)). Here, Timelines would not be using Facebook's trademark prosecution to improperly prove "propensity" or "conformity therewith." Timelines instead intends to use evidence of Facebook's trademark prosecution for the limited purpose of demonstrating intent,

knowledge, and lack of mistake— all of which are directly related to the issue of whether Facebook's trademark infringement was willful.

The Seventh Circuit has explained that evidence of prior acts is admissible if (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the evidence has probative value that is not substantially outweighed by the danger of unfair prejudice. *United States v. Wheeler*, 540 F.3d 683, 691 (7th Cir. 2008). As touched on above, Facebook's state of mind is directly at issue in this case because one of the things the jury must decide is whether Facebook's infringement was willful. Willful infringement occurs if the defendant <u>knew</u> it was infringing the plaintiff's mark or acted in reckless disregard of the plaintiff's rights. *See Zazu Designs, Ltd. v. L'Oreal, S.A.*, 979 F.2d 499, 507 (7th Cir. 1992).

Facebook's extensive trademark prosecution—consisting of 106 trademark applications— demonstrates that Facebook is a savvy and experienced trademark company. This is directly relevant to whether Facebook "knew" that it was infringing the TIMELINES marks. As a company that has a comprehensive and thorough understanding of trademark law, Facebook grasps and appreciates the subtleties of trademark law, particularly the way in which a seemingly ordinary term may still be entitled to trademark protection because of the context in which it is used. This sophisticated understanding is perhaps best demonstrated by Facebook's trademarks rights in the following ordinary terms: WALL, POKE, LIKE, FACE. (*See* S.J. Opn. p. 10.) A jury could therefore infer that Facebook knew and understood that Timelines had trademark

protection in the TIMELINES marks, despite that the term "timeline" also can be used generically.

In a similar way, Facebook's trademark prosecution is also relevant to negate Facebook's fair use defense. Here, Facebook will attempt to argue and introduce evidence that it did not use Timeline in a brand or trademark way. Again, related to this issue is Facebook's understanding of trademarks, specifically, the trademarking of common terms. In other words, Facebook should account for and explain why LIKE, POKE, and other common terms were trademarked as distinguishable from the reasons why Facebook would not and does not treat Timeline as a trademark. This is especially relevant when considering Facebook's trademark rights in WALL, which, as discussed, was replaced by Timeline.

Timelines, therefore, intends to use evidence of Facebook's trademark prosecution for the limited purpose of establishing that Facebook knew that it was infringing upon the TIMELINES marks, that Facebook intended to infringe, and that Facebook's infringement was not the result of an innocent mistake. These are proper purposes in which to admit prior acts under 404(b). *See United States v. Harrod*, 856 F.2d 996, 999 (7th Cir. 1988) ("Rule 404(b) does not bar such evidence [prior acts] if it is used to prove "motive, opportunity, **intent**, preparation, plan, **knowledge,** identity, or **absence of mistake or accident**." (emphasis added)).

The Seventh Circuit makes the above point clear and has explained that evidence of prior acts is admissible under 404(b) to demonstrate willfulness. In *United State v. Ellis*, for instance, the Seventh Circuit affirmed the district court's decision to admit evidence of a defendant's prior acts to negate the defendant's defense of accident and forgetfulness. 548 F.3d 539, 544 (7th Cir. 2008) There, the Court explained that evidence of the defendant's prior acts was directly relevant to show that the defendant had acted willfully because the defendant knew and was

"aware" of her duties but disregarded them. *Id.* Here, Timelines seeks to introduce evidence of prior acts for the same reason: to demonstrate that Facebook knew and understood that Timelines had protection in the TIMELINES marks but disregarded that protection by rolling out a similar product with a nearly identical name.

Courts outside this jurisdiction have also allowed prior acts under 404(b) to demonstrate willfulness or a relevant state of mind in trademark infringement cases. For example, the Central District of California admitted prior instances of trademark litigation "to show that the defendants *knew* what a trademark was and were unlikely to mistake clearly infringing behavior for non-infringing behavior" *Playboy Enterprises Inc. v. Hsin I. Chen*, 1997 WL 829339 *12 (C.D. Cal. Oct. 1, 1997) (emphasis added); *see also United States v. McGill*, 964 F.2d 222, 231 (3d Cir. 1992) ("[P]rior acts are always relevant in the assessment of willfulness" (citing *United States v. Dixon*, 698 F.2d 445, 447 (11th Cir.1983).); *Gucci Am., Inc. v. Guess?, Inc.*, 858 F. Supp. 2d 250, 253 (S.D.N.Y. 2012) ("[C]ourts frequently consider prior judicial resolutions of trademark disputes when discussing the alleged infringer's intent or bad faith."); *Bear U.S.A., Inc. v. A.J. Sheepskin & Leather Outerwear,* Inc., 909 F. Supp. 896, 907 (S.D.N.Y. 1995) (stating "serial infringement" is proof of bad faith.).

**E.  Facebook will Not be Unfairly Prejudiced; Any Unfair Prejudice Can be Mitigated by a Limiting Instructions.**

Evidence of Facebook's trademark prosecution is not barred by Rule 403 because its probative value is not substantially outweighed by its prejudicial effect. Although Facebook attempts to argue the contrary, its reasoning is strained and unconvincing. Facebook asserts that Rule 403 excludes this evidence "because a mini-trial on the validity of Facebook's marks and its prosecution and enforcements efforts relating to those marks will confuse the issues, mislead the jury and waste trial time." (Mtn. p. 4.) But here Facebook misses the point. First, Timelines

is not disputing the validity of any of Facebook's trademarks. In fact, Timelines concedes that Facebook's trademarks *are* valid and so a "mini-trial" is not necessary. Second, this evidence will not confuse or mislead the jury—it actually does just the opposite. As already discussed, this evidence demonstrates to the jury Facebook's state of mind, specifically its understanding of trademark law as it relates to its determination of when it decides to trademark a term and which terms it believes are protectable. This evidence will answer questions that jurors will, no doubt, be asking themselves about whether Facebook knew it was infringing. And, this evidence will help jurors evaluate Facebook's arguments against Timelines. This evidence, therefore, is probative of issues that are directly before the jury and it is not inadmissible merely because Facebook thinks it is damaging to it case. *See United States v. Dennis*, 497 F.3d 765, 769 (7th Cir. 2007) ("Rule 403 was never intended to exclude relevant evidence simply because it is detrimental to one party's case; rather, the relevant inquiry is whether any unfair prejudice from the evidence substantially outweighs its probative value." (citing *United States v. Lloyd*, 71 F.3d 1256, 1265 (7th Cir.1995)); *United States v. Thompson*, 359 F.3d 470, 479 (7th Cir. 2004) ("[A]ll probative evidence is prejudicial to the party against whom it is offered. Rather, the relevant inquiry is whether there was *unfair* prejudice." (emphasis added); *see also Ellis*, 548 F.3d at 544 (finding that the probative value of prior acts of trademark litigation "was not outweighed by the danger of unfair prejudice.")

In any event, to the extent there is any unfair prejudice, the Seventh Circuit has repeatedly pointed out that it can be mitigated by a limiting instruction. *See United States v. Wheeler*, 540 F.3d 683, 693 (7th Cir. 2008); *United States v. Jones*, 455 F.3d 800, 809 (7th Cir. 2006) (limiting instructions "are effective in reducing or eliminating any possible unfair prejudice from the introduction of Rule 404(b) evidence") (citation omitted). Here, the Court

can instruct the jury that evidence of Facebook's trademark prosecution should only be considered for the limited purpose of determining Facebook's knowledge of trademark law and not as propensity evidence.

## CONCLUSION

In summary, evidence of Facebook's trademark prosecution is relevant and admissible under a number of different evidentiary theories. For the reasons stated above, Timelines, Inc. requests that the Court deny Facebook's Motion *In Limine* No. 3: To Exclude Evidence, Argument, and Testimony regarding Facebook's Unrelated Trademark Prosecution and Enforcement Efforts.

Dated: April 15, 2013                    Respectfully submitted,

**TIMELINES, INC.,**
*Plaintiff/Counter-Defendant*

By: /s/ Douglas A. Albritton
James T. Hultquist (SBN 6204320)
Douglas A. Albritton (SBN 6228734)
Michael L. DeMarino (SBN 6298337)
Bruce R. Van Baren (SBN 6310375)
REED SMITH LLP
10 South Wacker Drive
Chicago, IL 60606-7507
312-207-1000
*Counsel for TIMELINES, INC.*

## CERTIFICATE OF SERVICE

I, the undersigned attorney, certify that I electronically filed foregoing document. Pursuant to Rule 5(b)(3) of the Federal Rules of Civil Procedure and Local Rule 5.9, I have thereby electronically served all Filing Users.

DATED:  April 15, 2013

Respectfully submitted,

**TIMELINES, INC.,**
*Plaintiff/Counter-Defendant*


By: /s/ Douglas A. Albritton
    James T. Hultquist (SBN 6204320)
    Douglas A. Albritton (SBN 6228734)
    Michael L. DeMarino (SBN 6298337)
    Bruce R. Van Baren (SBN 6310375)
    REED SMITH LLP
    10 South Wacker Drive
    Chicago, IL  60606-7507
    Telephone: +1 312 207 1000
    Facsimile: +1 312 207 6400
    *Counsel for Plaintiff/Counter-Defendant*
    *Timelines, Inc.*